# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

IVAN GOODLOW,
CDCR #AX-3970,

                            Plaintiff,

vs.

CAMACHO, et al.,

                         Defendants.

Case No.:  3:18-cv-0709-CAB-MDD

**ORDER: (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST PURSUANT TO 42 U.S.C. § 1997e(a) [ECF No. 69];**

**(2)  DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS MOOT [ECF No. 73]; AND**

**(3) DISMISSING UNSERVED DEFENDANTS PURSUANT TO FED. R. CIV. P. 4(m)**

    On April 9, 2018, Plaintiff Ivan Francis Goodlow, Jr. ("Plaintiff" or "Goodlow"), currently incarcerated at Kern Valley State Prison and proceeding pro se, filed a civil action pursuant to 42 U.S.C. § 1983. On October 10, 2018, the Court granted Plaintiff's application to proceed in forma pauperis, screened his Complaint pursuant to 28 U.S.C.

/ / /

§ (e)(2) and § 1915A, and directed U.S. Marshal service pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3) as to the named defendants. *See* ECF No. 8.[1]

On May 4, 2020, Defendants Camacho, Marin, Salas and Sigala ("Defendants")[2] filed a Motion for Summary Judgment. (ECF No. 69). On May 6, 2020, the Court notified Plaintiff of the requirements for opposing summary judgment pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc), and *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc). (ECF No. 71). On May 18, 2020, Goodlow filed an Opposition to Defendants' Motion (ECF No. 72) and a "Continuance of Opposition" on May 18, 2018. (ECF No. 77.)  Defendants filed a Reply on June 22, 2020. (ECF No. 85.) Meanwhile, on May 19, 2020, Goodlow filed his own Motion for Summary Judgment (ECF No. 73) and Defendants filed an Opposition to Plaintiff's Motion on June 11, 2020. (ECF No. 82.)

# I.     PROCEDURAL BACKGROUND

On April 9, 2018, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983, alleging eleven individuals,[3] including correctional officers and other staff at R.J. Donovan Correctional Facility (RJD), violated his civil rights by: (1) using excessive force against him, in violation of his Eight Amendment rights, (2) retaliating against him,

---

[1]  Page numbers for all documents filed in the Court's Case Management/Electronic Case File ("CM/ECF") will refer to the pagination generated by CM/ECF as indicated on the top right-hand corner of each chronologically-numbered docket entry.

[2] In this Order, "Defendants" refers collectively to the four defendants who are the subjects of the instant Motion for Summary Judgment—Camacho, Salas, Sigala and Marin—and not other unserved or previously dismissed defendants, unless otherwise noted.

[3] In his Complaint, Goodlow named the following eleven defendants: Camacho, Salas, Sagalas, Gonzalez, Kelly, Marin, Keener, Goyal, Hernandez, Self, and Smith. (*See* Compl., ECF No. 1 at 2–4.) Ultimately, Plaintiff was only able to serve Camacho, Salas, Sigalas, Marin, Keener, Self and Smith. (*See* ECF Nos. 24–34.)

in violation of his First Amendment rights, (3) depriving him of a meal in violation his Eighth Amendment rights and (4) filing a false disciplinary report, in violation of his rights under the Eighth, Ninth and Fourteenth Amendment. (*See* Compl., ECF No. 1 at 5–13.)

On February 14, 2019, Defendants Camacho, Keener, Marin, Salas, Self, Sigala[4] and Smith (the seven defendants who had been served) filed a Motion to Dismiss the Complaint. (*See* Defs.' Mot. to Dismiss, ECF No. 37.) In the motion, those seven defendants moved to dismiss (1) all claims against the seven served defendants in their official capacity, (2) all claims against Defendant Keener, and (3) all claims against Defendants Self and Smith. (*See* Defs.' Mem. P. & A. in Supp. of Mot. to Dismiss, ECF No. 37-1.) Goodlow filed an Opposition to the motion on March 11, 2019. (*See* Pla.'s Opp'n, ECF No. 39.) On April 22, 2019, Magistrate Judge Dembin issued a Report and Recommendation (R&R), recommending the Defendants' Motion be granted in part and denied in part. (R&R, ECF No. 40 at 14–15.)

On May 23, 2019, this Court adopted Magistrate Judge Dembin's Report and Recommendation. (Order, ECF No. 45.) The Court dismissed, without leave to amend: (1) all Goodlow's claims against defendants acting in their official capacity, (2) all claims against Defendants Smith and Self, and (3) Goodlow's Eighth Amendment claim as to Keener. (*Id.* at 3.) Goodlow's Fourteenth Amendment claim as to Defendant Keener was dismissed without prejudice and with leave to amend the Complaint. (*See id.*) Further, the Court notified Goodlow that in order to proceed as to the remaining unserved defendants, he must serve them by June 28, 2019. (*Id.* at 4.) Finally, the Court informed Plaintiff that

---

[4] The Court notes that in his original Complaint, Goodlow named "Sagalas." In his "Waiver of Service," pursuant to Federal Rules of Civil Procedure 4(d), counsel for Defendants noted the correct spelling is "Sigala." (*See* USM-285 Executions of Service, ECF No. 32 at 2.)

if he failed to file an Amended Complaint by June 21, 2019, the case would proceed without the unserved defendants. (*Id.*)

On June 21, 2019, Goodlow filed a Motion to Amend his Fourteenth Amendment claim as to Keener. (*See* Pla.'s Mot. to Am., ECF No. 49.) On June 24, 2019, the Court denied Plaintiff's Motion and gave him a final opportunity to file a First Amended Complaint that was complete in itself, no later than July 19, 2019. (Order, ECF No. 50 at 2.) Defendants were ordered to Answer the original complaint by August 2, 2019. (*Id.*) On June 24, 2019, Goodlow filed another Motion to Amend his Fourteenth Amendment claim against Keener and the Court denied the motion on July 26, 2019.[5] The Court further ordered the case to proceed with the "original complaint, as amended by the Order Adopting R&R." (Order, ECF No. 54 at 2.) In addition, the Court ordered Defendants Camacho, Sigala, Salas and Marin to answer the complaint by August 9, 2019 and gave Plaintiff until August 9, 2019 to serve the remaining (unserved) defendants. Finally, the Court notified Goodlow that if he failed to do so, the unserved defendants would be dismissed without prejudice.[6] (*Id.*)

On July 30, 2019, the Defendants Camacho, Marin, Salas and Sigala filed an Answer the Complaint. (Defs.' Answer, ECF No. 55.) Discovery proceeded and on May 4, 2020, Defendants filed the Motion for Summary Judgment (Defs.' Summ. J. Mot., ECF No. 69.) As discussed above, Goodlow filed an Opposition (Pla.'s Opp., ECF No. 72) and a Supplemental Opposition (Pla.'s Supp. Opp., ECF No. 77). Goodlow filed his own Motion for Summary Judgment on May 19, 2019 (Pla.'s Summ. J. Mot., ECF No. 73) and Defendants filed an Opposition to Plaintiff's Motion. (Defs.' Opp., ECF No. 82.)

---

[5] The motion was denied because Plaintiff had again failed to submit an Amended Complaint that was complete in itself. (*See* ECF No. 54 at 1–2.)

[6] Goodlow ultimately failed to serve the remaining four defendants, Gonzalez, Goyal, Hernandez and Kelly.

## II.   FACTUAL BACKGROUND[7]

On January 26, 2018, Goodlow was incarcerated at RJD. (*See* Compl. at 12; *see also* Goodlow Dep., ECF No. 69-4 at 4:10–12.) Goodlow had arrived at RJD approximately four months earlier, after being transferred there from another California Department of Corrections and Rehabilitation (CDCR) facility in the fall of 2017. (Goodlow Dep., ECF No. 69-4 at 4:14.) At the time of the January 26, 2018 incident, Goodlow was assigned to RJD's "Housing Unit 15," on "Facility C," which is designed for inmates diagnosed with certain psychiatric illness(es) and disabilities and referred to as the Enhanced Outpatient Program (EOP). (*See id.* at 4:25, 5:1–6.)

On January 26, 2018, Goodlow attended an EOP mental health group therapy session. (*Id.* at 7:17-23.) Goodlow admits he was "having a bad day" because he was "irritated" and "said a few cuss words" during group. (*Id.*) As a result, the group leader asked Goodlow to leave the session. (*Id.*) Goodlow was then escorted from the mental health building back to the door of Plaintiff's housing unit. The escort left Goodlow at the door to the housing unit while Goodlow waited for it to open. (*Id.* at 8:21–23.) Plaintiff states he saw Camacho inside at the podium, talking with a female correctional officer. (*Id.* at 9:1.) Goodlow states that after waiting for some time for one of the officers to open the door, he had began kicking the door to get their attention. (*Id.* at 9:1–6.)

Shortly thereafter, Camacho heard Goodlow kicking the door. (*See id.*; Camacho Decl., ECF No. 69-9 at ¶ 2.) Camacho states he asked Marin, the control booth operator, to open the housing unit door and Camacho walked to the door to speak to Goodlow. (*See id.*; *see also* Marin Decl., ECF No. 69-10 at ¶¶ 2–3.) When the door opened and Goodlow entered the housing unit, Camacho asked Goodlow why he was kicking the door. (Camacho Decl., ECF 69-9 at ¶ 3; *see also* Goodlow Dep., ECF No. 69-4 at 9:7–8, 10:13–15.)

---

[7] These facts are undisputed unless otherwise noted.

At some point, the discussion got heated and Goodlow said he was "tired of you racist COs." (*See* Goodlow Dep., ECF No. 69-9 at 10:17–19; 11:1–2; *see also* Camacho Decl., ECF No. 69-10 at ¶ 3.) Shortly thereafter, Camacho put Goodlow in handcuffs and escorted him inside the housing unit.[8] (Goodlow Dep., ECF No. 69-4 at 11:6–9; Camacho Decl., ECF No. 69-9 at ¶ 4, Marin Decl., ECF No. 69-10 at ¶ 5.) Once inside the unit, Camacho escorted Goodlow toward the shower area, which, according to Camacho, was to allow Goodlow to "calm down."  (Camacho Decl., ECF No. 69-9 at ¶ 5.) At some point, Goodlow again stated that he was "tired of you fucking racist COs." (Goodlow Dep., ECF No. 69-4 at 13:6–7; *see also* Camacho Decl., ECF No. 69-9 at ¶ 3.)

As to what happened next, the accounts of the parties diverge but it is not disputed that a physical altercation erupted. According to Goodlow, as Camacho was attempting to force him into the shower, Camacho "slammed m[e], bam, slammed me on my face." (Goodlow Dep., ECF No. 69-4 at 14:10–12.) Camacho states that Goodlow attempted to pull away from him and tried to "head butt" a female correctional officer, Sergeant Gonzalez, who had approached to try speak to Goodlow. (Camacho Decl., ECF No. 69-9 at ¶ 6.) Camacho asserts he then pulled Goodlow to the ground. (*Id.*, *see also* Goodlow Dep., ECF No. 69-4 at 13:14–15.)

Shortly thereafter, additional correctional officers, including Defendants Marin, Sigala and Salas, arrived at the scene. (*See* Marin Decl., ECF No. 69-10 at ¶ 7; Salas Decl., 69-11 at ¶ 2, Sigala Decl., ECF No. 69-12 at ¶ 2; *see also* Goodlow Dep., ECF No. 69-4 at 15:9–12.) The parties dispute the events that followed but according to Goodlow, all four defendants physically slammed him to the ground, punched him, and choked him even after he was handcuffed and subdued. (*See* Goodlow Dep., ECF No. 60-4 at 16:6-25.) Goodlow alleges one officer put a "spit mask" on him, telling him "[t]his is a fucking noose." (*Id.* at 16:6-9.) For their part, Defendants contend Goodlow was

_____

[8] The parties dispute some of the details surrounding the moments leading up to Camacho handcuffing Goodlow.

disruptive and noncompliant and they used only the amount of force necessary to get Goodlow restrained for his own safety as well as the safety of the correctional officers and other inmates. (*See* Camacho Decl., ECF No. 69-6 at ¶¶ 6–7, Marin Decl., ECF No. 69-10 at ¶ 9, Sigala Decl., ECF No. 69-12 at ¶¶ 2–3, Salas Decl., ECF No. 69-11 at ¶¶ 2–3.)

## III.   Defendants' Motion for Summary Judgment

Defendants have moved for summary judgment on the ground that Goodlow failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a) prior to filing his 42 U.S.C. § 1983 complaint in this Court on April 9, 2018. (*See* Defs.' P & A in Supp. of Summ. J. Mot., ECF No. 69 at 1.) In addition, Defendants argue that Goodlow's retaliation claims should be "dismissed with prejudice" because "Plaintiff cannot state a claims for retaliation."[9] (*Id.* at 21.) In the alternative, Defendants argue summary judgment should be granted as to the retaliation claim because Defendants are entitled to qualified immunity.[10] (*Id.* at 23–25.) In support of the motion, Defendants submit evidence including declarations from Defendants and other CDCR officials, portions of Goodlow's deposition and documents related to Goodlow's administrative appeals concerning the January 26, 2018 incident. (*See* ECF Nos. 69-2–69-12.)

/ / /

/ / /

---

[9] The Court notes that Defendants did not previously move to dismiss Goodlow's retaliation claim(s) for failure to state a claim. (*See generally*, ECF No. 37.)

[10] Defendants request this Court to take judicial notice of Goodlow's Complaint. (*See* Defs.' Req. Jud. Not., ECF. No. 69-2 at 1.) While a court may take judicial notice of matters of public record, (*see* Fed. R. Evid. 201) this Court need not take judicial notice Plaintiff's Complaint—the operative pleading in this case. *See Nanavati v. Adecco*, 99 F. Supp. 3d 1072, 1075 (N.D. Cal. 2015) ("The Court need not take judicial notice of Exhibit A, which is the operative pleading in this action."). The Court therefore **DENIES** Defendants' request for judicial notice (ECF No. 69-2) as **MOOT**.

## A.      Legal Standards for Summary Judgment

Summary judgment is generally proper if the movant shows there is no genuine dispute as to any material fact and he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino*, 747 F.3d at 1166; *Washington Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether a fact is disputed or undisputed, must be supported by: (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

When Defendants seek summary judgment based on the Plaintiff's failure to exhaust specifically, they must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). If they do, the burden of production then shifts to the Plaintiff "to show that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191. Only "[i]f the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, [is] a defendant is entitled to summary judgment under Rule 56." *Albino*, 747 F.3d at 1166.

Finally, "[a] [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). District courts must also "construe liberally motion papers and pleadings

8

filed by pro se inmates and … avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

### B.   <u>Exhaustion</u>

Defendants first argue summary judgment must be granted because Goodlow failed to exhaust his administrative remedies before filing his Complaint.

### 1.   *Legal Standards for Exhausting Administrative Remedies*

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) (quoting 42 U.S.C. § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA[.]" *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted). The PLRA also requires that prisoners, when grieving their appeal, adhere to CDCR's "critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court." *Id.* at 204. The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Therefore, regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as that process remains available to him. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies ... available,' and the prisoner need not further pursue the grievance." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (original emphasis) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 136 S. Ct. at 1862; *see also Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (stating that the PLRA

does not require exhaustion when circumstances render administrative remedies "effectively unavailable.").

Grievance procedures are available if they are "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738); *see also Williams*, 775 F.3d at 1191 ("To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'") (quoting *Albino*, 747 F.3d at 1171). In *Ross*, the Supreme Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is *not* capable of use to obtain relief." 136 S. Ct. at 1859 (emphasis added). These circumstances arise when: (1) the "administrative procedure . . . operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60 (citations omitted).

Applying these principles, the Ninth Circuit has specifically found that "[w]hen prison officials fail to respond to a prisoner's grievance within a reasonable time, the prisoner is deemed to have exhausted available administrative remedies within the meaning of the PLRA." *See Andres v. Marshall*, 854 F.3d 1103, 1105 (9th Cir. 2017) (per curiam) (finding RJD's 6-month failure to respond to an inmate grievance rendered prisoner's administrative remedies unavailable); *accord Dole v. Chandler*, 438 F.3d 804, 809, 811 (7th Cir. 2006) (officials' failure to respond to a "timely complaint that was never received" rendered prisoner's administrative remedies unavailable). The Ninth Circuit has further found administrative remedies "plainly unavailable" where prison officials "screen out an inmate's appeals for improper reasons," *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010), and "effectively unavailable" where they provide the inmate mistaken instructions as to the means of correcting a claimed deficiency, but upon re-submission, reject it as untimely after compliance proved impossible. *See Nunez v.*

*Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010). Administrative remedies may also prove unavailable if the prisoner shows an "objectively reasonable" basis for his belief that "officials would retaliate against him if he filed a grievance." *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015).

Because the failure to exhaust is an affirmative defense, Defendants bear the burden of raising it and proving its absence. *Jones*, 549 U.S. at 216; *Albino*, 747 F.3d at 1169 (noting that Defendants must "present probative evidence—in the words of *Jones*, to 'plead and prove'–that the prisoner has failed to exhaust available administrative remedies under § 1997e(a)"). Otherwise, Defendants must produce evidence proving the Plaintiff's failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable Plaintiff, shows he failed to exhaust. *Albino*, 747 F.3d at 1169

### 2. *CDCR's Exhaustion Requirements*

With respect to their initial burden on summary judgment, the Court finds Defendants have offered sufficient evidence, which Goodlow does not contradict, to prove that the California Department of Corrections and Rehabilitation (CDCR) has established an "administrative remedy" for prisoners, like Plaintiff, to pursue before filing suit under § 1983. *See Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted).

Specifically, Defendants submit declarations from E. Frijas, the Appeals Coordinator for RJD (Frijas Decl., ECF No. 69-7) and Howard Moseley, Associate Director of the Office of Appeals for CDCR (Moseley Decl., ECF No. 69-5), both accompanied by exhibits. As Frijas and Moseley attest, under Title 15 of the California Code of Regulations, a CDCR prisoner may appeal "any policy, decision, action, condition, or omission by the department or its staff that [he] can demonstrate as having a material adverse effect upon his . . . health, safety, or welfare." Cal. Regs. Code. tit. 15, § 3084.1(a). Since January 28, 2011, and during the times alleged in Goodlow's Complaint, there have been three levels of appeal review. (Frijas Decl., ECF No. 69-7 at

¶ 2; *see also* Cal. Code Regs. tit. 15, § 3084.8(b)(1).) In order to properly exhaust, a California prisoner must, "submit a CDCR form 602, inmate appeal, within thirty (30) calendar days of the action or decision being appealed." (Frijas Decl., ECF No. 69-7 at ¶ 2, *see also* Cal. Code Regs. tit. 15, § 3084.8(b)(1).) The inmate must "describe the adverse action he or she is appealing, in addition to the specific relief he or she requests." (Frijas Decl., ECF No. 69-7 at ¶ 2.) The CDCR Form 602 "shall be submitted to the appeals coordinator at the institution." *Id.* § 3084.2(c), § 3084.7(a).

As Frijas states in his declaration, inmate appeals are "initially filed and screened" at the "first level" unless the first level is otherwise waived. (Frijas Decl, ECF No. 69-7 at ¶ 2.) Frijas notes that an appeals coordinator may bypass the first level for "various reasons outlined under Cal. Code Regs. tit. 15, § 3084.7." (*Id.*) Although Frijas does not go into detail in his declaration, under Title 15, appeals alleging staff misconduct constitute an exception to the regular appeal process. Cal. Code Regs. tit. 15, § 3084.9(i). If an appeal is accepted as a staff complaint, the first level of review is bypassed. *Id.* § 3084.7(a)(3) ("The appeals coordinator may bypass the first level for appeal of . . . [a]n issue that cannot be resolved at the division head level such as Associate Warden, Associate Regional Parole Administrator, CALPIA manager or equivalent."); *see also id.* § 3084.9(i)(1) ("Only after the appeal has been reviewed and categorized as a staff complaint by the hiring authority or designee at a level not below Chief Deputy Warden, Deputy Regional Parole Administrator, or equivalent level shall it be processed as a staff complaint."). Further, if an internal affairs investigation is initiated, the inmate must be informed of the investigation and, eventually, its outcome. *Id.* § 3084.9(i)(4)(A). And if the inquiry is deemed confidential, the inmate must be informed of the inquiry and, eventually, whether the findings determined that staff did or did not violate policy. *Id.* § 3084.9(i)(4)(B).

Assuming the grievance is processed at the first level, the complaint is addressed by a "First Level Reviewer." (Frijas Decl., ECF No. 69-7 at ¶ 2.) If the first level by filing a CDCR Form 602 appeal is "denied or not otherwise resolved to the appellant's

satisfaction at the first level," Cal. Regs. tit. 15, § 3084.7(b), the prisoner must "within 30 calendar days . . . upon receiving [the] unsatisfactory departmental response," *id.* § 3084.8(b)(3), seek a second level of administrative review, which is "conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden, Deputy Regional Parole Administrator, or the equivalent." *Id.* § 3084.7(b), (d)(2)); *see also* Frijas Decl., ECF No. 69-7 at ¶ 2.) If the inmate is not satisfied with the second level response, he can "submit it to the Office of Appeals for third level review" in Sacramento. (Cal. Regs. Code tit. 15, § 3084.7(c); Frijas Decl., ECF No. 69-7 at ¶ 2.)

"The third level is for review of appeals not resolved at the second level." *Id.* § 3084.7(c). "The third level review constitutes the decision of the Secretary of the CDCR on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies," *id.* § 3084.7(d)(3), "unless otherwise stated." *Id.* § 3084.1(b); *see also* CDCR Operation's Manual § 541100.13 ("Because the appeal process provides for a systematic review of inmate and parolee grievances and is intended to afford a remedy at each level of review, administrative remedies shall not be considered exhausted until each required level of review has been completed.").

Generally, an inmate's appeal can be "cancelled and returned" to the inmate if it is not submitted within the required time limits.  Inmates must submit their appeal within thirty days of the event giving rise to the issue raised in the appeal. Cal. Code Regs. tit. 15, § 3084.8(b)(1). Once an appeal is submitted it is given a tracking number and entered into a computed tracking system for inmate grievances. (Frijas Decl., ECF No. 69-7 at ¶ 5.)

California regulations require CDCR staff to respond to first level responses within "30 working days from the date of receipt by the appeals coordinator." Cal. Code Regs. tit. 15, § 3084.8(c)(1). Likewise, second level appeal responses must be completed in thirty working days. *Id.* § 3084.8(c)(2). Third level responses are required to be completed in "60 working days" from date of receipt. *Id.* § 3084.8(c)(3). These time

limits may be extended if one of the following exceptions applies: (1) unavailability of the inmate, staff or witnesses, (2) the complexity of the matter requires additional research, (3) the investigation requires the involvement of other agencies or jurisdictions and/or (4) a "state of emergency pursuant to § 3383(c) requires postponement." Cal. Code Regs. tit. 15, § 3084.8(d). Once the inmate receives the response from the third level of review, he is deemed to have "exhausted the administrative remedies within the CDCR." *Id.* at § 3084.7(d)(3), *see also* Frijas Decl., ECF No. 69-7 at ¶ 3.

### 3. *Goodlow's Administrative Appeal History*

As discussed above, Goodlow alleges in his Complaint that Defendants used excessive force and retaliated against him during an incident at RJD which took place on January 26, 2018. (Compl., ECF No. 1 at 5–11.) Defendants contend that summary judgment must be granted because there is no genuine dispute that Plaintiff failed to properly complete exhaustion of his administrative remedies through the third level prior to filing his federal complaint in this Court on April 9, 2018. (Defs.' P. & A. Supp. of Summ. J. Mot., ECF No. 69 at 15–21.)

Frijas states in his declaration that, as Appeals Coordinator at the RJD Inmate Appeals Office, he receives "all inmate grievances (also known as appeals or CDCR Form 602s submitted by inmates at the institutional level," which include reviews of first and second level appeals. (Frijas Decl., ECF No. 69-7 at ¶ 1.) At the Attorney General's request, Frijas conducted a search to determine whether Goodlow had "submitted an appeal in 2018 while housed at [RJD]" which included allegations that "Defendants F. Camacho, J. Marin, F. Salas, and M. Sigala used excessive force against him. (*Id.* at ¶ 7.) Similarly, as CDCR's Associate Director of the Office of the Appeals (OOA), Moseley conducted a search at the request of the Attorney General's Office for "all non-healthcare related appeals received by OOA while Goodlow was housed at RJD. (Moseley Decl., ECF No. 69-5 at ¶ 7.) Along with their declarations, Frijas and Moseley attached exhibits which include copies of Goodlow's grievances and appeals, as well as responses from RJD and CDCR officials.

1     Defendants contend that summary judgment is required here because Goodlow

2  failed to complete exhaustion of his administrative remedies before filing his federal

3  complaint. Defendants point to two grievances, discussed below.

4              a.    <u>CDCR 602 Log. No. RJD-18-0459</u>

5     On January 27, 2018, the day after the incident, Goodlow submitted an inmate

6  grievance by submitting a CDCR 602 form. In it, Goodlow alleged "excessive force" on

7  the part of Camacho and other correctional officers at RJD. In the 602, Plaintiff further

8  alleged that Camacho had "harassed me when I initially arrived [at RJD a few months

9  prior] and I wrote him up," appearing to suggest resentment regarding Goodlow's prior

10  staff complaint may have been a partial motivator for the January 26, 2018 incident.

11  (ECF No. 69-8, Ex. B at 11.) In addition to the excessive force and retaliation allegations,

12  Goodlow also complained that correctional officers, including Camacho and others

13  involved in the incident, were disrespectful to African American inmates in particular,

14  and alleged the altercation was, at least in part, motivated by racial animus. (*See* ECF No.

15  69-8, Ex. B at 11.)

16     According to the CDCR Inmate Appeal Tracking System, Goodlow's grievance

17  was assigned the Log. No. RJD-18-00459 and was "received" by CDCR on January 31,

18  2018.[11] (*See* Inmate/Parolee Appeals Tracking System Level I & II, ECF No. 69-8, Ex. F

19  at 54.) On the same day, January 31, 2018, an Inmate Appeal Route Slip indicates the

20  Inmate Appeals Office categorized Goodlow's 602 as a "Staff Complaint" and directed

21  the appeal be assigned to "appropriate staff for SECOND level response." (ECF No. 69-

22  6, Ex. B at 18.) The router slip indicates that the "due date" for a response was March 3,

23  2018. (*See* Inmate Appeal Route Slip, ECF No. 69-6, Ex. B at 18.)

24  */ / /*

---

[11] The 602 form is stamped "received" on January 27, 2018. (*See* ECF No. 69-6, Ex. B at 8.)

On March 6, 2018, the RJD Appeal Coordinator informed Goodlow in writing that there was an "exceptional delay in review of [the] appeal due to the 'necessary involvement of other agencies or jurisdictions'" and as a result, the "estimated completion date" had been extended to April 4, 2018.[12] (*See* ECF No. 69-8, Ex. A at 3.) Plaintiff was interviewed on May 30, 2018 was part of the investigation into the allegations raised in his appeal. (*See* ECF No. 69-8, Ex. B at 5.) On June 20, 2018, Goodlow's appeal was "partially granted," concluding that the "inquiry has been reviewed and all issues adequately addressed" but that "staff did not violate CDCR policy" as to the issues raised. (ECF No. 69-8, Ex. B at 6.)

Plaintiff appealed to the third level. According the CDCR Inmate Tracking System for Level III Appeals, Goodlow initially attempted to submit a third level appeal on September 7, 2018, challenging the second-level finding of no staff misconduct. (Decl. Moseley ECF No. 69-6 at ¶ 9(a); *see also* Appeal History Log, ECF No. 69-6, Ex. A at 3.) On December 6, 2018, Goodlow's third level appeal was "screened out" because he purportedly failed to include the necessary "supporting documents." (Decl. Moseley ECF No. 69-6 at ¶ 9(a); *see also* Letter, ECF No. 69-6, Ex. B at 20.) Goodlow resubmitted his third level appeal with the appropriate documentation and it was accepted by CDCR on December 24, 2018. (Decl. Moseley ECF No. 69-6 at ¶ 9(a); *see also* Appeal History Log, ECF No. 69-6, Ex. A at 3.) On February 21, 2019, Goodlow's third level appeal was

---

[12] In his declaration, Frijas states that "the facility captain conducting the second level of appeal requested and received extensions of time to complete the appeal on February 28, 2018, March 26, 2018, April 19, 2018 and May 18, 2018." (Frijas Decl., ECF No. 69-7 at ¶ 8(a).) Attached as an exhibit is one such letter to Goodlow, dated March 6, 2018, informing him of "exceptional delay" in reviewing his appeal due to "necessary involvement of other agencies and jurisdictions" including the IERC which appears to be a reference to the "Institutional Executive Review Committee." A handwritten notation on the notification states the response was now "[d]ue 4/5/18." (CDCR Memorandum, ECF No. 69-8, Ex. A at 3.) Defendants do not include memoranda related to the other three extensions.

denied. (*See* Third Level Decision, ECF No. 69-6, Ex. B at 6–7.) In its written decision, the CDCR noted Goodlow's "allegation was appropriately reviewed and evaluated by administrative staff" and the reviewer "concurs with the [second level review] determination. (*Id.* at 6.)

#### b. CDCR 602 Log. No. RJD-18-1710

Goodlow filed a second grievance/appeal related to the January 26, 2018 incident. On March 16, 2018, the RJD Office of Appeals received an appeal from Goodlow contending that the Senior Hearing Officer had improperly found him guilty of a Rules Violation, specifically for assaulting the correctional officers during the January 26, 2018 incident.[13] (Frijas Decl, ECF No. 69-7 at ¶ 8(b); Moseley Decl, ECF No. 69-5 at ¶ 9(b).)

On July 18, 2018, Goodlow submitted an appeal, later given the tracking number RJD-18-1710, alleging that the rule violation hearing officer failed to properly review all the evidence before finding him guilty.[14] (Frijas Decl, ECF No. 69-7 at ¶ 8(b), ECF No. 69-8 Ex. E at 54–57.) On May 15, 2018, Goodlow's second level appeal was denied. (ECF No. 69-8, Ex. B at 18; *see also* Frijas Decl, ECF No. 69-7 at ¶ 8(b). On July 2, 2018, Goodlow submitted a third level appeal from Goodlow on July 2, 2018, again alleging the RJD Senior Hearing Officer improperly found him guilty of assault. The Office of Appeals denied Goodlow's third level appeal on October 25, 2018. (Moseley Decl., ECF No. 69-5 at ¶ 8(b); *see also* ECF No. 69-6, Ex. A at 3.)

---

[13] On February 22, 2018, a result of the Rules Violation Report and subsequent disciplinary hearing, Goodlow was guilty of assault on a peace officer by means not likely to cause great bodily injury and assessed sanctions, including loss of good-time credits, phone privileges and visitation. (Disciplinary Hearing Results, ECF No 69-8, Ex. C at 23–28.)

[14] Goodlow alleged, among other things, that the hearing officer failed to properly consider evidence that the RJD mental health clinician who conducted a "Mental Health Assessment" of Goodlow after the incident improperly determined that Goodlow's mental health disorder did not contribute to his behavior during the incident. (Memorandum, ECF No. 69-8, Ex. C at 16–20.)

### 4.   Analysis

Defendants do not dispute that Goodlow timely submitted grievances related to, among other things, the January 26, 2018 incident, and included claims of excessive force and retaliation. (*See* Defs.' P. & A. Supp. of Summ. J. Mot., ECF No. 69 at 11.) Nor do Defendants contend Plaintiff failed to ultimately exhaust his administrative remedies in compliance with CDCR regulations. (*Id.*) Defendants argue, however, that summary judgment must be granted because there is no genuine dispute that Goodlow failed to complete that process until well after he filed the instant Complaint. (*See id.* at 17–21.)

The PLRA "requires that a prisoner challenging prison conditions exhaust available administrative remedies *before* filing suit." *Albino*, 747 F.3d at 1165 (emphasis added) (citing 42 U.S.C. § 1997e(a)); *see* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). As discussed above, under CDCR regulations, exhaustion requires the completion of the third level of administrative review. *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010); *see* Cal. Code Regs. tit. 15, § 3084.1(b).

Based on the record here, the Court finds Defendants have shown that administrative remedies were available to Goodlow prior to filing his federal lawsuit. First, as described above, CDCR has a detailed process for seeking administrative review of grievances. *See* Cal. Code. Regs. tit. 15, § 3084 et. seq; *see also* Frijas Decl., ECF No. 69-7 at ¶¶ 2–4; Moseley Decl., ECF No. 69-5 at ¶¶ 3–5.) Further, not only were such remedies available to Goodlow, evidence in the record makes clear that Goodlow availed himself of that process and was, in fact, ultimately able to exhaust his administrative remedies in accordance with CDCR regulations. (Frijas Decl., ECF No 69-7 at ¶ 8; Moseley Decl., ECF No. 69-6 at ¶ 8.)

Finally, the evidence shows that Goodlow elected to file his federal lawsuit while that process was still ongoing, and well before it was complete. Specifically, Goodlow

filed his Complaint in this Court on April 9, 2018, more than ten months *before* his CDCDR 602 Log No. RJD-18-0459 was exhausted at the third level of review. (*See* Compl., ECF No. 1 at 1; *see also* ECF No. 69-6, Ex. B.) As such, this Court finds Defendants have presented evidence which shows a lack of genuine dispute regarding Goodlow's failure to complete exhaustion prior to filing his federal lawsuit, Defendants have satisfied their initial burden on summary judgment. *See Albino*, 747 F.3d at 1172.

### 5. Goodlow's Burden

The burden now shifts to Goodlow. *See Matsushita Elec. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, Goodlow must present evidence in the form of affidavits and/or admissible discovery material to show there is something in his *particular case* that made the existing and generally available administrave remedies effectively unavailable to him" at the time he filed suit on April 9, 2018. *Albino*, 747 F.3d at 1172 (emphasis added) (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5) ("[The burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, undue prolonged, inadequate or obviously futile.")).

In his Opposition, Goodlow acknowledges that, while he "did exhaust his administrative remedies," he filed his federal complaint before completion of the process. (Pl.'s Opp., ECF No. 72 at 2.) Goodlow argues, however, that his failure to await resolution of his administrative appeals should be excused because at the time he filed his federal complaint, those remedies were effectively "unavailable" to him for two reasons. First, he contends he was "frightened" as a result of the alleged assault by correctional officers and feared he could face retaliation while he awaited completion of the appeal process. (*Id.*) Goodlow states in this Opposition that his fear of retaliation "should be some type of justification behind plaintiff filing [his federal civil complaint] as soon as he can." (Pla.'s Opp., ECF No. 72 at 2.) Second, and somewhat relatedly, Goodlow appears to suggest he filed suit before exhaustion process was completed because the CDCR

/ / /

failed to timely process his appeal(s) and he was concerned about waiting any longer due, in part, to his fear of retaliation. (*See id.*)

a.   <u>Fear of Retaliation</u>

The Ninth Circuit has held that "fear of retaliation may be sufficient to render the inmate grievance procedure unavailable." *McBride*, 807 F.3d at 984. To render the grievance procedure unavailable by "a threat of retaliatory action by a prison guard," a plaintiff must show both an objective and subjective basis for a fear of retaliation. *Id*. Goodlow fails on both counts.

In order to satisfy the objective prong, "there must be some basis in the record for the district court to conclude that a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance." *Id.* at 987. Here, evidence in the record shows Goodlow submitted his initial 602 grievance (later assigned Log No. RJD-18-0459) on January 27, 2018, the day after incident. (*See* ECF No. 69-6, Ex. B at 8.) Goodlow does not dispute that while his grievance in RJD-18-0459 was being processed, the CDCR informed him in writing that, because the complexity of the claims and involvement of multiple agencies, the resolution of his second level appeal would be would take longer than 30 days, in accordance with CDCR regulations under Title 15, section 3084.8(e).[15] Goodlow also does not dispute that CDCR issued extensions of time

---

[15] Section 3084.8(e) states:

> Except for the third level, if an exceptional delay prevents completion of the review within the specified time limits, the appellant, within the time limits provided in subsection 3084.9(c), shall be provided an explanation of the reasons for the delay and the estimated completion date."  Cal. Regs. Code. § 3084.8(e). The exceptions enumerated in section 3084.8(c) included "complexity of the decision," and "necessary involvement of other agencies or jurisdictions.

20

to resolve the second-level review pursuant to § 3084.8(e) on February 28, 2018, March 26, 2018, April 19, 2018 and May 18, 2018. (*See* Frijas Decl., ECF No. 69-7 ¶ 8(a). Nor does Plaintiff dispute that he was informed *in writing* of the delay, and the reasons for it. (*See* Mem., ECF No. 69-8, Ex. A at 3) (stating the reason for delay was "necessary involvement of other agencies or jurisdictions).

Instead, Goodlow stresses that he felt compelled to file his federal complaint before resolution of his administrative appeal because, after his January 26, 2018 purported assault, he was "frightened" and that "should be justification for filing as soon as he can." (Pl.'s Opp., ECF No. 72 at 2.) But, as of April 9, 2018, the day Goodlow filed his federal complaint, his fear of retaliation was no longer immediate. (*See* Compl., ECF No. 1 at 1.) In fact, as Goodlow concedes, by the time he filed his complaint, he had already been transferred to another prison in Los Angeles County (LAC) and his administrative appeals related to the January 26, 2018 incident at RJD remained pending. (Goodlow's Dep., ECF No. 69-4 at 36:10–12.) Goodlow presents no evidence suggesting that, after arriving at LAC, a reasonable prisoner would have reason to fear retaliation if he awaited the resolution of an appeal related to an incident occurring at another institution. And he points to no evidence in the record to show how or why a prisoner who had already been transferred from the offending institution (RJD) could reasonably believe that CDCR officials at the new institution (LAC) would retaliate against him should he proceed. *See McBride*, 807 F.3d at 987; *see also Rodriguez v. County of Los Angeles*, 891 F.3d 776, 792 (9th Cir. 2018). Thus, the Court concludes Goodlow has not shown the existence of a factual dispute that he had an objective fear of retaliation if he pursued his grievances. *See Albino*, 747 F.3d at 1172

Even assuming Goodlow could satisfy the objective prong, his argument still fails because he has also failed present evidence that to show a subjective fear of retaliation

---

Cal. Regs. Code § 3084.8(c)(2)–(3).

rendered his "existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. Under the subjective prong, a prisoner must "provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance" and that he was actually deterred from filing a grievance. *Id.* at 987–88. Here, Goodlow provides no evidence of any specific threats from Defendants or other CDCR personnel which would support a subjective basis for his purported fear that he would be retaliated if continued to pursue his administrative appeals, which were already submitted and for which an investigation was ongoing as of April 9, 2018 when he filed his Complaint.

First, Goodlow admits that he has filed numerous grievances during his time as a CDCR inmate, both before and after the January 26, 2018 incident. (Goodlow Dep., ECF No. 69-5, 31:3-10.) Indeed, Goodlow concedes he continued to file grievances while he was incarcerated at RJD, even after his initial 602 in Log. No. RJD-18-0459 was submitted, up until the time he was transferred to LAC sometime before April 9, 2018. (*See* Pl.'s Supp. Opp., ECF No. 77, Ex. P at 12; *see also* Goodlow Dep., ECF No. 69-4, 36:10–12.) Significantly, Goodlow continued to participate in the investigations related to his grievance in RJD-18-0459, even after his transfer from RJD. On May 30, 2018, over a month after filing his federal complaint, Goodlow was interviewed by a CDCR investigator about the circumstances of the January 26, 2018 incident and the allegations contained in Goodlow's appeal, Log. No. RJD-18-0459. By that time, Goodlow had been transferred yet again, from LAC, where he had been confined at the time he filed his lawsuit, to Kern Valley State Prison (KVSP). (*See* Appeal Response, ECF No. 69-6, Ex. B at 12.)

Moreover, Goodlow failed to produce evidence of specific threats from Defendants or other CDCR personnel to support his contention that he had a subjective fear of retaliation if he proceeded with his grievance. Goodlow simply contends that he feared he might be retaliated against while his appeal was pending, despite having been transferred to a new facility shortly after the incident. Plaintiff's conclusory contentions in this

regard are insufficient to meet his burden of production on summary judgment to show he had a subjective fear of retaliation at the time he filed his lawsuit sufficient to render administrative remedies unavailable to him. *See Porter v. Nussle*, 534 U.S. 516 (2002) (rejecting a categorical exception to the exhaustion requirement for excessive force complaints where the inmate alleged that prison officials subjected him to "a prolonged and sustained pattern of harassment and intimidation"); *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 997–98 (6th Cir. 2004) (holding that nonspecific allegations of fear do not excuse the failure to exhaust administrative remedies); *see Wood v. McCormick*, No. 2017-cv-0983 JAM CKD, 2020 WL 406774, at *4 (E.D. Cal. Jan. 24, 2020).

Finally, Goodlow has not presented evidence that he was thwarted from filing his grievance or hindered from filing subsequent grievances after his initial excessive force and retaliation 602 in RJD-18-0459 was submitted. To the contrary, he received a decision on his second level appeal in RJD-18-0459 on June 20, 2018. (ECF No. 69-8, Ex. B at 5–6.) Following that, Goodlow appealed the decision to the third level, submitting his initial third level appeal on September 7, 2018 (*See* Log, ECF No. 69-6, Ex. A at 3.) Goodlow was notified that his initial third level appeal submission was "screened out" on December 6, 2018 for failure provide the CDCR with the necessary documentation. (*See id.*) Goodlow re-filed his third level appeal on December 24, 2018 with the required documents and it was accepted by the CDCR OOA. (*Id.*) Goodlow's third level appeal was ultimately denied on February 21, 2019. (*Id.*; *see also id.,* Ex. B at 6–7.) In sum, Plaintiff was willing and able to complete the administrative appeal process all the way through the third level. Goodlow has provided no evidence to support his assertion he had a subjective belief that "local remedies were ineffective, unobtainable, undue prolonged, inadequate or obviously futile." *Hilao*, 103 F.3d at 778 n.5; *see also Albino*, 747 F.3d at 1172.

Thus, the Court finds Goodlow has failed to demonstrate a genuine dispute as to whether he had an objective and subjective fear of retaliation for pursuing his administrative remedies related to his excessive force and retaliation claims *See McBride*,

807 F.3d at 988 (emphasizing that "[h]ostile interaction, even when it includes a threat of violence, does not necessarily render the grievance system 'unavailable.'"). Accordingly, the Court finds Plaintiff has failed to meet his burden of demonstrating that the CDCR's grievance procedure was effectively unavailable to him as a result of a purported threat of retaliation. *See Albino*, 747 F.3d at 1166.

b.   Delay in Processing Grievances

Goodlow appears to further argue that the administrative process was unavailable to him because the responses to his grievances were delayed. (*See* Pl.'s Opp., ECF No. 72 at 2.) The Ninth Circuit has stated that when prison officials improperly fail to timely process a prisoner's grievance, the prisoner may be deemed to have exhausted available administrative remedies. *Andres*, 867 F.3d at 1079 (finding RJD's 6-month failure to respond to an inmate grievance rendered prisoner's administrative remedies unavailable). But *Andres* makes clear that even when a response is delayed, the prisoner must still establish that the delay rendered "administrative remedies . . . effectively unavailable." *Id.* at 1076; *see also Brown*, 422 F.3d at 943 (citing *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[F]ailure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable. . . ."); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) (affirming district court decision not to dismiss for failure to exhaust when a Department of Corrections' failure to respond to a preliminary grievance precluded the plaintiff from pursuing a formal grievance).

In *Brown*, the Ninth Circuit held that the plaintiff's administrative remedies were available because nothing in the record suggested the plaintiff was "prejudiced by the long time it took to conclude the investigation into his staff complaint." *Id*. The other circuit court cases cited in *Brown* shed some light on the meaning of "prejudice" in these cases. For example, in *Foulk*, the Eighth Circuit concluded that a prison's failure to respond to prisoner's informal request, which precluded him from filing an administrative appeal, rendered administrative remedies unavailable. *Foulk*, 262 F.3d at 698 (8th Cir. 2001); *see also Jernigan*, 304 F.3d at 1032 (citing cases for the proposition that the

24

"failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable").

In light of *Brown,* district courts have concluded that administrative remedies may be deemed "effectively unavailable if (1) prison officials have failed to timely respond to a grievance, (2) the inmate has received no notice of or justification for the delay, and (3) the inmate has no other available avenues to seek administrative relief." *Rupe v. Beard*, No. 08-CV-2454-EFS-PC, 2013 WL 2458398, at *15 (E.D. Cal. June 6, 2013); *see also Ellis v. Cambra*, No. 1:02-CV-5646-AWI-SMS-P, 2005 WL 2105039 (E.D. Cal. Aug. 30, 2005). In such instances, the prisoner has "no redress for grievances except by way of a lawsuit, and the inmate's failure to exhaust under those circumstances must be excused." *Rupe*, 2013 WL 2458398, at *15. In *Andres*, for example, administrative remedies were deemed unavailable because, in that case, the prison had failed entirely to process the California prisoner's 602 grievance. *Andres*, 854 F.3d at 1078. That is not the case here.

Goodlow submitted his initial grievance in RJD-18-0459 on January 27, 2018, the day after the incident, and did not receive final decision at the third level administrative review until over a year later, on February 21, 2019. (*See* ECF No. 69-6, Ex. A at 3.) However, Goodlow filed his federal complaint on April 9, 2018, less than 90 days after filing his initial grievance and well *before* he had even completed his second level appeal. (*See* Compl., ECF No. 1 at 1.) As discussed above, RJD officials conducting the review had sought and received extensions of time to complete Goodlow's second level appeal on February 28, 2018, March 26, 2018, April 19, 2018 and May 18, 2018. (*See* Frijas Decl., ECF No. 69-7 at ¶ 8(a). Defendants submitted one such notification of "exceptional delay," which was sent to Goodlow on March 6, 2018 and stated that review of his appeal would be delayed an additional thirty days, due to "[n]ecessary involvement of other agencies or jurisdictions." (Mem., ECF No. 69-8, Ex. A at 3.) Goodlow does not deny he received the memo notifying him that the decision due date had been extended to April 5, 2018. (ECF No. 69-8, Ex. A at 3.) Nor does he deny that RJD officials received two subsequent extensions and that he was notified as such, in accordance with CDCR

regulations. (*See* Frijas Decl., ECF No. 69-7 at ¶ 8(a) (citing Cal. Regs. Code tit. 15, § 3084.8(e).)

Goodlow also knew his grievance was being investigated (and not ignored) by RJD officials because he was interviewed via telephone on May 30, 2018 by a CDCR investigator. During the interview, Goodlow was given an opportunity to relay his concerns regarding the January 26, 2018 incident and the grievance proceedings. (*See* CDCR Memorandum, ECF No. 69-8, Ex. B at –6.) As such, to the extent the resolution of Goodlow's initial second level grievance was delayed, it did not render his administrative remedies unavailable. Here, the first level of the appeal process was bypassed because Goodlow's grievance, which contained allegations of excessive force and retaliation, was deemed a "Staff Complaint." (ECF No. 689-8, Ex. F, *see also* Frijas Decl., ECF No. 69-7 at ¶ 8(a).) As discussed above, the Appeals Office must ordinarily complete the second level review "within 30 working days of receipt by the appeals coordinator," barring an exception. Cal. Code. Regs. tit. 15, § 3084.8(c)(1). One such exception permits an extension of the time limits based on "[t]he complexity of the decision, action, or policy requiring additional research." *Id*. § 3084.8(d)(2). In this case, the RJD Appeals Office used that precise language the letter notifying Goodlow of its processing delays. (*See* ECF No. 69-8, Ex. A at 3.) Thus, Goodlow's claim that CDCR officials "improperly fail[ed] to process [his] grievance" is undermined by evidence showing CDCR was indeed processing the grievance and notified Goodlow of the status of his appeal.

When prison administrators fail to respond to grievances in a "timely fashion," a prisoner must wait "a reasonable amount of time for a response to [his] grievance," before the prison officials' failure to respond renders "relief at the administrative level unavailable" for purposes of exhaustion. *Goolsby v. Cty. of San Diego*, No. 3:18-CV-0564-WQH-NLS, 2020 WL 1673036, at *6 (S.D. Cal. Apr. 6, 2020) (citing *Rupe*, 2013 WL 2458398, at *16 (E.D. Cal. June 6, 2013) ("An inmate who files suit a mere one or two days after an appeal-response deadline has passed has probably not demonstrated that

administrative remedies are effectively unavailable, as the Ninth Circuit requires. . . . But, on the other hand, after the inmate has waited a reasonable period of time and has received no response or notice of delay, the failure by prison officials to abide by inmate-grievance regulations must excuse the inmate's failure to exhaust; otherwise, prison officials could indefinitely delay inmates from pursuing legal remedies simply by ignoring all inmate appeals.") Here, Goodlow has not presented evidence sufficient to show administrative remedies were "effectively unavailable" because he continued to pursue his administrative appeals after filing the Complaint and he ultimately completed the process.

In sum, the CDCR appeals process in this case did not "operate as a simple dead end." *Ross*, 136 S. Ct. at 1859. To the contrary, Goodlow's appeals were processed in compliance with CDCR regulations and, to the extent there was some delay, Goodlow was properly notified. Finally, even assuming the delay caused Goodlow some frustration, unlike the plaintiffs in *Andres* and *Foulk*, Goodow was not in fact prevented from pursuing his administrative remedies. It was Goodlow who elected not to await the decision on his second level appeal, despite having been notified by CDCR officials of the reasons for the delay. *See Andres*, 854 F.3d at 1078.

### 6. Conclusion

Based on the foregoing, the Court concludes Defendants are entitled to summary judgment under Rule 56 because the "undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust" administrative remedies and Goodlow has failed to satisfy his burden to show administrative remedies were "unavailable" to him. *See* Fed. R. Civ. P. 56; *see also Albino*, 747 F.3d at 1166. Thet Court **GRANTS** Defendants' motion for summary judgment based on a failure to exhaust.

### C.   Retaliation Claim

In their Motion for Summary Judgment, Defendants argue in the alternative that, even assuming Goodlow's claims were properly exhausted, Defendants are entitled to

summary judgment on Goodlow's retaliation claim because he "fails to state a claim." (Defs.' P. & A. Supp. of Summ. J. Mot., ECF No. 69 at 21–22,) Further, Defendants contend that, even assuming Goodlow states a retaliation claim, Defendants are entitled to qualified immunity. (*Id.* at 23–24.) Because the Court concludes summary judgment is appropriate as to all claims for failure to exhaust, the Court need address the merits of Goodlow's retaliation claim, or whether Defendants are entitled to qualified immunity as to that claim.

## IV. Plaintiff's Motion for Summary Judgment

As noted above, Goodlow has also moved for summary judgment. (*See* Pla.'s Summ. J. Mot., ECF No. 73) While Goodlow captions the document as a "Motion for Summary Judgment," the contents of the motion are effectively arguments in opposition to Defendants' motion. For instance, Goodlow argues, as he did in his Opposition to Defendants' Motion, that he did adequately exhaust his administrative remedies because he feared retaliation if he waited until exhaustion was completed. (*See id.* at 5).

To the extent Plaintiff argues in his motion that summary judgment should be granted against Defendants, Goodlow's arguments go to the weight of the evidence in dispute. Goodlow does not contend there is "no genuine dispute of material fact," as required under Rule 56. Instead, Goodlow argues "the court should grant my motion because there *is* a genuine issue of material fact and clear indication of [triable issues]." (*Id.* at 2–7 (emphasis added).) As such, the Court liberally construes Goodlow's Motion for Summary Judgment as his opposition to Defendants' Motion and addresses those arguments above.

To the extent Plaintiff attempts to argue summary judgment must be granted in his favor because there is no genuine issue of material fact as to the merits of his excessive force and retaliation claims, the motion is **DENIED** as **MOOT** in light of his failure to exhaustion administrative remedies prior to filing this action.

/ / /

/ / /

## V.   Unserved Defendants

Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *See Crowley v. Bannister*, 734 F.3d 967, 976 (9th Cir. 2013). As discussed above, in this Court's July 26, 2019 Order denying Goodlow's Motion to Amend his Fourteenth Amendment claims, Goodlow was notified that if he did not properly serve Defendants Gonzalez, Goyal, Kelly and Hernandez by August 19, 2019, the action against those defendants would be dismissed. (Order, ECF No. 54 at 2.) No proof of service as to Gonzaelz, Goyal, Kelly or Hernandez was ever filed, and Goodlow did not request an extension of time to serve them by the prescribed deadline. *See* Fed. R. Civ. P. 4(m). Thus, because Defendants Gonzalez, Goyal, Kelly and Hernandez have not been timely served, Plaintiff's claims against them are **DISMISSED**. *See* Fed. R. Civ. P. 4(m); *see Mozzer v. Prison Health Svc.*, 250 Fed. Appx. 786, 787 (9th Cir. 2007) (concluding that the district court did not abuse its discretion in dismissing case against defendants because the prisoner plaintiff "did not timely identify or serve those defendants even after he was given an extension of time to do so"); *see also Hason v. Med. Bd. of Cal.*, 279 F.3d 1167, 1174 (9th Cir. 2002) (concluding that district court did not abuse its discretion in dismissing case against unserved defendants on its own motion).

## VI.   Conclusion and Order

Accordingly, the Court:

1)   **GRANTS** Defendants' Camacho, Marin, Salas and Sigalas Motion for Summary Judgment based on Plaintiff's failure to exhaust his administrate remedies prior

/ / /

/ / /

/ / /

/ / /

to filing suit, pursuant to 42 U.S.C. § 1997e(a) and **DISMISSES** Plaintiff's First and Eighth Amendment claims against them **WITHOUT PREJUDICE**.[16]

2)    **DENIES** Plaintiff's Motion for Summary Judgment as **MOOT** (ECF No. 73);

3)    **DISMISSES** Defendants Kelly, Goyal, and Hernandez based on Goodlow's failure to timely serve them pursuant to Fed. R. Civ. P. 4(m); and

4)    **DIRECTS** the Clerk to enter a final judgment of **DISMISSAL** and close the file.

**IT IS SO ORDERED**.

Dated:  September 24, 2020

_____

Hon. Cathy Ann Bencivengo
United States District Judge

---

[16] "Failure to exhaust administrative remedies is properly treated as a curable defect and should generally result in a dismissal without prejudice." *City of Oakland, Cal. v. Hotels.com LP*, 572 F.3d 958, 962 (9th Cir. 2009) (citing *O'Guinn v. Lovelock Corr. Center*, 502 F.3d 1056, 1063 (9th Cir. 2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1119–20 (9th Cir. 2003). Plaintiff may bring these now exhausted claims in a new and separate civil action so long as he does so within the applicable statute of limitations. Section 1983 claims are governed by the forum state's statute of limitations for personal injury actions. *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009). The applicable statute of limitations under California law is two years. Cal. Civ. Proc. Code section 335.1; *see Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). Additionally, California law tolls the statute of limitations for up to two years for inmates serving less than life terms. Cal. Civ. Proc. Code section 352.1; *Jones*, 393 F.3d at 927. The effective statute of limitations for an action by a prisoner under 42 U.S.C. section 1983 is therefore up to four years notwithstanding the fact that "[t]he applicable statute of limitations is tolled when a prisoner completes the mandatory exhaustion process." *Brown*, 422 F.3d at 943.